## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Troy K. Scheffler,                              Court File No. 11-CV -3279 (JNE/JJK)

      Plaintiff,

v.

Jack Molin,
in his individual capacity
acting under color of law as a
Crystal Building Inspector,

and the

City of Crystal, Minnesota,

      Defendants.

---

PLAINTIFF'S
MEMORANDUM
OF LAW IN SUPPORT OF
MOTION TO COMPEL DISCOVERY

---

### Introduction

In accordance with Fed. R. Civ. P. 26, 33, 34, and 37, Plaintiff Troy Scheffler moves the Court, the Hon. Jeffrey J. Keyes, Magistrate Judge, to compel the defendants to produce withheld requested documents and answer unanswered interrogatories. Plaintiff certifies that, in accordance with LR D. Minn. 37.1, he has made good faith efforts through counsel to meet and confer with defendants' counsel to resolve this discovery dispute without resort to motion practice. Plaintiff further certifies that impasse makes this motion necessary. Mr. Scheffler moves the court to compel the defendants to answer interrogatories 1 – 5, 8 – 12, 14, 18, and 19 fully and truthfully, to answer document request numbers 1 and 8,

to enter into a protective order to facilitate discovery, as the defendants promised

in the joint Fed. R. Civ. P. 26(f) report, to compel Mr. Molin to sign answers to

interrogatories under oath, and to pay costs and reasonable attorney fees in

accordance with Fed. R. Civ. P. 37(a) and LR D. Minn. 54.3 for their unjustified

refusal to answer discovery demands fully, truthfully, and on time, and Mr.

Molin's refusal to sign answers to interrogatories directly to him and defendant

City of Crystal.

## Facts[1]

A. Claims

Mr. Scheffler states claims against Crystal building inspector Jack Molin in

his individual capacity for actions under color of law that violate Mr. Scheffler's

clearly established rights under U.S. Const. amend. I and XIV, protected through

42 U.S.C. § 1983, to be free from intimidation and coercion in the exercise of his

rights of freedom of speech and peaceful petition of government for redress of

grievances.[2]  He sues Crystal for concomitant defamation for Mr. Molin's

---

[1]Mr. Scheffler cites his verified complaint (Cmplt), plaintiff's first set of
interrogatories, plaintiff's first request for production of documents, defendants'
answers to plaintiff's first set of interrogatories, defendants' answers to the
plaintiff's first request for production of documents, plaintiff's reply to the
defendants' answers to plaintiff's first set of interrogatories, defendants' surreply
dated 4 June 2012, plaintiff's first request for admissions and accompanying
exhibits, and the remaining exhibits accompanying the Declaration of Peter J.
Nickitas, in support of this motion.
[2] Cmplt., Claims I and II

false, defamatory communications against Mr. Scheffler in the presence of other Crystal employees.[3]

B. 3 October 2008 Events That Give Rise to This Lawsuit

The claims arise from a videotaped[4] 3 October 2008 encounter between Mr. Scheffler and Mr. Molin at Crystal City Hall. Mr. Scheffler goes to City Hall, on behalf of a friend, to address permits and building inspection issues concerning his friend's Crystal property. He speaks with Mr. Molin. Scheffler is peaceful. In the presence of other Crystal employee, Mr. Molin loudly accuses Mr. Scheffler of being a criminal. He throws Mr. Scheffler out of the building.[56]

Mr. Scheffler returns promptly. He speaks to the receptionist and requests a form on which he may file a complaint against Mr. Molin.[7] Mr. Molin sees Mr. Scheffler filling out the form and directs another Crystal employee to call the police on Mr. Scheffler.[8] Mr. Scheffler takes his complaint form, leaves the building again, and goes to the adjoining Crystal Police Headquarters. He meets Sergeant Holm on duty there, describes his encounter with Molin, and informs him that he expects to be arrested then and there for complaining against Molin.[9]

---

[3] Id., Claim III
[4] No sound on the video recording
[5] Cmplt., ¶¶ 14 - 50
[6] Nickitas Decl. Ex. 1 (video recording) (placeholder)
[7] Cmplt, ¶¶ 51 - 54
[8] Id., ¶ 55
[9] Id., ¶¶ 56 - 66

Having a history of panic attacks, Mr. Scheffler fears being falsely charged with a criminal offense.[10]

No charges against Mr. Scheffler ensue then, or any other time.[11] Sergeant Holm, on the other hand, hands him the business card of Mr. Peters, Mr. Molin's supervisor, and informs Mr. Scheffler that Mr. Peters would be interested in Mr. Scheffler's complaint against Mr. Molin.[12] Sergeant Holm identifies four witnesses, all Crystal employees, to the encounter.[13]

C. Notice of Claim, Complaint against Mr. Molin, and First Data Practices Act Request

Mr. Scheffler makes his complaint against Mr. Molin. He serves a Notice of Claim against Mr. Molin and Crystal on 9 October 2008.[14] He makes his first request for access to data to Crystal for data concerning himself, Mr. Molin's personnel file, and the encounter with Mr. Molin, on 9 October 2008.[15]

D. Crystal's Response to First Data Practices Act Request

He receives a partial answer on or about 14 October 2008 from Crystal City Manager Anne Norris. The answer indicates discipline in progress against Mr. Molin, without further details.[16]

---

[10] Id., ¶¶ 67 - 69
[11] Id., ¶ 70
[12] Id., ¶¶ 71 - 72
[13] Id., ¶¶ 73 - 74
[14] Id., ¶ 83
[15] Plaintiff's First Request for Admissions, Exhibits 7, 8 and 11 (Nickitas Declaration Ex. 2, 3, 4, and 5)
[16] Id., Exhibit 4, Nickitas Decl. Ex. 6

On 17 November 2008 he receives a second letter from City Manager Norris. She states:

> As noted in my October 14 letter to you, the incident referenced in your complaint was being investigated. That investigation is now complete. Consistent with Minnesota Data Privacy laws, you are entitled to know that final disciplinary action was issued to Jack Molin as a result of this investigation and was related to his treatment of a customer as such behavior is a violation of the City's personnel policy.[17]

He emails the Crystal City Manager on 22 November 2008, to demand access to additional, undisclosed documents. Mr. Scheffler states:

> I received your letter  stating that  there was "final disciplinary action" issued concerning my October 9th complaint. I would like a copy of that action sent to my address below. I also received a letter from the city's claims adjuster stating per his investigation that Mr. Molin did nothing wrong by threatening me, physically touching me, intimidating me, and then calling the police on me.  I am interested to find out what was determined in your investigation; 1 am assuming it was the same one…. It just amazes me just from the video footage that you have and now I have that the adjuster would come to such a conclusion.[18]

He receives a letter from Michael Norton of Kennedy-Graven, Crystal's attorneys, on 4 December 2008, stating that he represents Crystal and, in Mr. Norton's opinion, that Crystal has answered fully.  He remarks:

> As Ms. Norris indicated, a personnel investigation was initiated arising out of the October 3 incident, and completed. Ms. Norris advised you that disciplinary action against the employee, Jack Molin, was issued as a result of the investigation and that the discipline was based on violation of the City's personnel policy. As a result, it is my view that Ms. Norris has met the requirements of the statute by providing you the public data indicated. Ms. Norris is not going to respond to the other statements in your November 22 email

---

[17] Id., Exhibit 2, Nickitas Decl. Ex. 7
[18] Id., Exhibit 10, Nickitas Decl. Ex. 8

on my advice, since you have asserted a claim against the City of Crystal arising out of the October 3 incident.[19]

E. Mr. Scheffler's Second Data Practices Act Request

Through counsel, Mr. Scheffler makes a second request for access under the Data Practices Act on 11 September 2009.[20]  On 23 September 2009, Crystal answers.[21]

F. Lawsuit, Interrogatories, and Request for Production of Documents

Mr. Scheffler puts the case into suit in late 2011. On 29 March 2012, he propounds interrogatories and requests for production of documents.[22]  After agreeing to an extension, Mr. Scheffler receives the defendants' answers to interrogatories and requests for production of documents on 12 May 2012.[23][24]

G. Deficiencies and Discrepancies in the Defendants' Answer to Request for Production of Documents

The answers to requests for production of documents include documents previously requested, but heretofore not disclosed, that related to the incident at

---

[19] Id., Exhibit 1, Nickitas Dec. Ex. 9.  Mr. Scheffler also makes audio recordings of calls with Crystals employees Sgt. Holm and Janet Lewis, and Crystal's adjuster, Mr. Mike Sullivan.  Nickitas Decl. Ex. 10 (placeholder)
[20] Nickitas Declaration Ex. 11, 11 September 2009 MGDPA Request
[21] Nickitas Declaration Ex. 12, 23 September 2009 Answer from Crystal with enclosures (17 November 2008 letter, 14 October 2008 letter, notation of one completed discipline against Mr. Molin in April 2008, and one pending in October 2008 (Scheffler incident)
[22] Nickitas Declaration Ex. 13 and 14, Plaintiff's First Set of Interrogatories and Plaintiff's First Request for Production of Documents
[23] Nickitas Declaration Ex. 15, 11 May 2012 cover letter
[24] Nickitas Declaration, Ex. 16, Defendants' Answers to Plaintiff's First Set of Interrogatories

the heart of this lawsuit and previous discipline of Mr. Molin for similar misconduct.[25] Exhibit 9, the 22 October 2008 Memorandum from City Manager Norris to Mr. Molin informing him of a three-day suspension for the incident with Mr. Scheffler on 3 October 2008, refers to interviews with employees as part of the investigation.[26] No records of these interviews have been produced.

Exhibit 9 is the first disclosure of the actual discipline imposed on Mr. Molin for the 3 October 2008 encounter with Mr. Scheffler. The letter states:

> I have received, reviewed and accepted the results of the investigation which found there is credible evidence that sustains the complaint Your behavior in this incident involved using a loud voice and an aggressive demeanor In an attempt to control the actions of a customer. The expectation for all employees is that customers are to be treated with respect and courtesy. The conduct displayed during this incident is unacceptable.
>
> Earlier this year, you received a written reprimand for violation of the City's Workplace Conduct Policy. Because of this current incident and the incident in March of this year, I am suspending you without pay from work for three days. These days shall be October 28- 30, 2008.
>
> If any complaints are received regarding similar incidents in the future, which are substantiated, further disciplinary action may be taken, up to and including termination. The City of Crystal does not tolerate retaliation towards anyone who complains about offensive or discriminatory behavior. You are directed to take no retaliatory or hostile action towards the complainant or any of the observers. Further, you are directed to ensure something like this doesn't happen again.[27]

---

[25] Plaintiff's First Request for Admissions, Exhibit 9 and Exhibit 12, Nickitas Dec. Ex. 17 and 18

[26] Id., Exh. 9, Nickitas Decl. Ex. 17

[27] Id.

Exhibit 4 of the Request for Admissions, provided in the defendants'
answer to request for production of documents, is a second copy of the 14 October
2008 letter to Mr. Scheffler from City Manager Norris.[28]   This copy is clean,
whereas the copy of the 14 October 2008 letter sent in response to Mr. Scheffler's
second Data Practices Act request has handwritten notations, reading "talked to
MV 10-15-08" and "emailed Anne John + Kim 10-15-08".[29]   No such emails
appear in the answers to request for production of documents.

H. Deficiencies and Discrepancies in the Answers to Interrogatories

Defendants serve their answers to interrogatories by U.S. Mail on 11 May
2012.[30]   Through counsel, Mr. Scheffler notes numerous deficiencies in breach of
Fed. R. Civ. P. 33 and 37.   He details the deficiencies in a document titled
"**Defendants' Answers to Plaintiff's First Set of Interrogatories** *and Plaintiff's*
*Reply*".[31]   The document serves as an effort to meet and confer to resolve the
existing discovery dispute.[32]

Out of nineteen interrogatories, Mr. Scheffler notes discrepancies in
answers 1 – 5, 8 – 12, 14, 18, and 19.[33]   Defendants reply on 4 June 2012, with an
unequivocal refusal to alter any answer.[34]

Mr. Scheffler identifies all deficient interrogatory answers indiscriminately

---

[28] Id., Exh. 4, Nickitas Decl. Ex. 19
[29] See n. 20, supra
[30] See n. 23, supra
[31] Nickitas Decl. Ex. 20
[32] Id., p. 3
[33] Id., pp. 1 - 15
[34] Nickitas Declaration Ex. 21, Defendants' "Surreply"

for the purpose of this motion, but he seeks particular relief for six deficiencies,

namely:

(a) Interrogatory #2, "State the factual bases for each and every affirmative

defense that the defendants raise in their answer, including qualified immunity,

official immunity, self-defense, contributory negligence, assumption of risk,

failure to state a claim for which relief can be granted, statutory immunity,

inadequate service of process, and subject matter jurisdiction."

Defendants answer:

**Defendants object to this request because it (1) is vague, overly
broad, and unduly burdensome; (2) calls for a legal conclusion;
(3) seeks information that is irrelevant and/or not likely to lead
to the discovery of admissible evidence; (4) attempts to impose
burdens on Defendants in excess of that provided in the Federal
Rules of Civil Procedure; (5) seeks information protected by the
attorney-client privilege or attorney work product doctrine;
and/or (6) seeks private, confidential, or non-public data
protected from disclosure by the Minnesota Government Data
Practices Act. Defendants will not provide any further response.**

(b)    Interrogatory #3, "Identify each and every individual whom the

defendants, their agents, or their representatives have interviewed, queried, or

questioned in connection with the claims that give rise to this lawsuit, giving the

individuals' respective names, addresses, telephone numbers, and email addresses

whenever available[;]"

Defendants answer:

**Defendants object to this request because it (1) seeks information
that is irrelevant and/or not likely to lead to the discovery of
admissible evidence; and/or (2) seeks private, confidential, or
non-public data protected from disclosure by the Minnesota**

**Government Data Practices Act. Defendants will not provide any further response.**

(c) Interrogatory #4, "Identify each and every clause, passage, chapter, verse, or rule of the City of Crystal personnel policy of which Mr. Jack Molin was found in violation in his interaction with plaintiff Troy Scheffler on 8 October 2008, as set forth in the letter of Mr. Michael T. Norton, Kennedy & Graven, Chtd, dated 3 December 2008."

Defendants answer:

**Defendants object to this request because it (1) is vague, overly broad, and unduly burdensome; (2) seeks information that is irrelevant and/or not likely to lead to the discovery of admissible evidence; (3) attempts to impose burdens on Defendants in excess of that provided in the Federal Rules of Civil Procedure; (4) seeks private, confidential, or non-public data protected from disclosure by the Minnesota Government Data Practices Act; and/or (5) the document speaks for itself. Subject to and without waiving said objections, Defendants provide the following response: The City did not find Mr. Molin in violation of any specific section of the personnel policy in the discipline memo. Investigation and discovery are continuing.**

(d) Interrogatory #18: "Identify all individuals by name, title, address (work or residential), telephone number (work or residential), and email address (work or personal) whom the City of Crystal, its agents, employees, or representatives questioned in connection with the incident between Mr. Molin and plaintiff that gives rise to this lawsuit[;]"

Defendants answer: "**See Answer to Interrogatory No. 3, hereinabove.**"

(e) INTERROGATORY NO. 19: Identify all documents, audio recordings, video recordings, emails, texts, faxes, correspondence, or other data in any medium

10

which the City of Crystal, its agents, employees, or representatives examined in connection with the incident between Mr. Molin and plaintiff that give rise to this lawsuit.

Defendants answer:

> **Defendants object to this request because it (1) is vague, overly broad, and unduly burdensome; (2) seeks information that is irrelevant and/or not likely to lead to the discovery of admissible evidence; (3) attempts to impose burdens on Defendants in excess of that provided in the Federal Rules of Civil Procedure; (4) seeks information protected by the attorney-client privilege or attorney work product doctrine; and/or (5) seeks private, confidential, or non-public data protected from disclosure by the Minnesota Government Data Practices Act. Subject to and without waiving said objections, Defendants provide the following response: Assistant City Manager Kimberly Therres investigated the events of October 3, 2008, which are the subject of this lawsuit. In the course of investigation, Ms. Therres reviewed surveillance video of the City Hall front counter area and front hallway for the time frame of 3:15 pm to 3:45pm on October 3, 2008. Attached please find a copy of this videotape as well as other public data responsive to this request. However, the City has not and will not provide private data, specifically private personnel data, pursuant to the Minnesota Government Data Practices Act.  Investigation and discovery are continuing.**

and

(f) Refusal of Defendant Jack Molin to sign the answers to interrogatories under affirmation or oath, with Crystal's representative, City Manager Anne Norris.[35]

---

[35] Id.  "Interrogatory No. l: Jack Molin did not assist in the responses to the interrogatories, and therefore, he was not identified in response to this interrogatory. Further, there are no discovery answers for which Mr. Molin needs to provide a signed, notarized, and executed signature."

I. Deficiencies and Discrepancies in the Answers to Requests for Production of Documents

Mr. Scheffler seeks documents responsive to the interrogatories, in accordance with Fed. R. Civ. P. 33 and 34 and Minn. Stat. §§ 13.04 subd. 3, 13.03 subd. 3, 13.43 subd. 2, and 13.82.[36]

The defendants refuse to provide documents responsive to the interrogatories that Mr. Scheffler notes as deficient. Specifically, defendants refuse to produce the full collection of data relating to the incident between Mr. Scheffler and Mr. Molin. Defendants produce a redacted memorandum dated 24 September 2010 describing an incident in which an observer stated that Mr. Molin's "demeanor created an unsafe hearing; and the hearing officer perceived you to be out of control, and she was concerned about harm to individuals at the hearing."[37] The document adds, "In 2008, I received a complaint regarding your behavior toward a customer."[38] The memorandum states on page 2, "In 2008, you received discipline for violations of the city's Workplace Conduct policy. Because of these past similar incidents, I am suspending you from work without pay for five days."[39]

The 22 October 2008 memorandum suspending Mr. Molin on account of his encounter with the plaintiff indicates the existence of data reviewed by the City

---

[36] Nickitas Declaration Ex. 14, Plaintiff's First Request for Production of Documents

[37] Nickitas Declaration Ex. 22

[38] Id.

[39] Id.

Manager leading to her decision to suspend Mr. Molin for three days without pay. Defendants produce no such records.

Defendants produce a Fed. R. Civ. P. 26(b)(5) privilege log in accordance with Request #3.[40]  The log includes the following entries, relevant to this lawsuit: 04/01/08 Memorandum -- "Investigation-Workplace Conduct Policy Complaint w/Redaction"; Various 2002 – 2012 Form – "Performance Evaluation Forms [re Jack Molin]"; 09/24/10 Memorandum – "Discipline – Employee Conduct at September 9 Administrative Hearing with Redactions"; 10/23/08 Memorandum -- "Other Personnel Documents"; 10/27/08 Memorandum -- "Other Personnel Documents"; 10/2008 File "Complaint Investigation"; 03/2008 File "Complaint Investigation".[41]  Each entry lists the Minnesota Government Data Practices Act as the privilege.[42]

In response to interrogatories #3 and #18, which seek the identities of witnesses to the incident at the heart of the lawsuit, and request for production #1, seeking documents responsive to interrogatories, defendants state:

> ANSWER: Defendants object to this request because it (1) seeks information that is irrelevant and/or not likely to_ lead to the discovery of admissible evidence;· and/or (2) seeks private, confidential, or non-public data protected from disclosure by the Minnesota Government Data Practices Act.  **Defendants will not provide any further response.  [emphasis added]**[43]

---

[40] Nickitas Declaration, Ex. 23

[41] Id.

[42] Id.

[43] Nickitas Declaration Ex. 16, Defendants' Answers to Plaintiff's First Set of Interrogatories #3 and #18

Plaintiff requests W-2's of defendant Molin from 2008 – 2011 at Request for Production #8.  Evidence of the defendant's income is necessary for proving up and establishing an award of punitive damages.  Defendants refuse to produce any W-2's, stating, "Defendants will not provide any further response."[44]

J. <u>Defendants Renege on Commitment to Enter into Protective Order</u>

The parties filed separate Fed. R. Civ. P. 26(f) reports.  Defendants' report, Doc. 9, at p. 4, § C states:

**C. PROTECTIVE ORDER**

The parties anticipate jointly filing a protective order to cover the discovery of relevant but non-public personnel data and will follow the Court's suggestion to use Form 6 as a template for any such order.

In an effort to resolve the present discovery dispute, Mr. Scheffler provides a draft Protective Order based on Form 6 of the Local Rules.[45]

The defendants' counsel states at page 1 of their surreply:

On Friday, I received your proposed protective order, in which you are seeking non-public and/or confidential personnel data on Mr. Molin. This data are not relevant to the present case and implicates Mr. Molin's privacy interests.  Therefore, we will not produce this data, and we will not enter into a protective order that contemplates our production of this data.   Second, Defendants' discovery obligations in this lawsuit under the Federal Rules of Civil Procedure and the City's obligations regarding data under the Minnesota Government Data Practices Act ("MGDPA") are not one

---

[44] Nickitas Declaration Ex. 25, Defendants' Answers to Plaintiff's First Request for Production of Documents
[45] Nickitas Declaration Ex. 26, Draft Protective Order

and the same. While there may be some overlap with these obligations, at times, these obligations are also mutually exclusive.[46]

This motion follows.

## DISCUSSION

## I. **Relevance and Contention Interrogatories**

A. <u>Fed. R. Civ. P. 26(b)(1)</u>

Fed. R. Civ. P. 26(b)(1) sets wide parameters for discovery, allowing discovery of "any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence," subject to court-ordered limitation under Fed. R. Civ. P. 26(b)(2)(C) (unreasonably cumulative or duplicative, squandering of past ample opportunities for discovery, and burden and expense outweighing likely benefit of discovery).  *Seattle Times v. Rhinehart*, 467 U.S. 20, 29 – 30, 36 – 37, 104 S. Ct. 2199 (1984) (broad scope of Fed. R. Civ. P. 26(b)(1); Rule 26(b)(1); appropriately tailored protective order per Fed. R. Civ. P. 26(c); subject to First Amendment analysis), *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2003) (same).

Fed. R. Civ. P. 33 and 34 require specific objections to interrogatories. "Boilerplate," nonspecific objections do not satisfy Rules 33, 34, or 37.  <u>See</u> *Hemmingsen v. Messerli & Kramer, P.A.*, 09-cv-1384, pp. 18 - 19 (Order, D. Minn. May 12, 2010) (Boylan, Arthur J., M.J.) (law firm compelled to

---

[46] Nickitas Declaration Ex. 21, Defendants' Surreply, p. 1

answerinterrogatories and respond to document requests; $2,500 in attorney fees awarded), *Kelly v. Fedex Ground Package System, Inc.*, 10-cv-01265 pp. 2 – 3 of 6 (Order, S.D. W. Va. Apr. 26, 2011) (Eilert, Cheryl, M.J.) (boilerplate objections to interrogatories and document requests set aside; defendant compelled to answer), *Mills v. East Gulf Coal Preparation Co., LLC*, 08-cv-0260, pp. 7 – 8 of 11 (Order, S.D. W. Va. Aug. 4, 2009) (R. Clarke Vandervort, M.J.) (USERRA case; "Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable[;]" plaintiff's motion to compel granted, with invitation to petition for attorney fees and costs).

B. <u>Contention Interrogatories</u>

Fed. R. Civ. P. 33(a)(2) authorizes the use of "contention interrogatories". "Contention interrogatories" reach the facts behind parties' affirmative defenses and their contentions.  <u>See</u> *Lewton v. Divingnzzo*, 09-cv-2, pp. 2 - 3 of 4 (Order, D. Neb. Apr. 21, 2010) (Gossett, M.J.):

> The term "contention interrogatories" may encompass several types of questions. For example, they may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts. <u>They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations.</u>  *In re Grand Casinos, Inc., Sec. Litig.*, 181 F.R.D. 615, 618 (D. Minn. 1998) (quoting *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996)) (emphasis added by Minnesota court). True contention interrogatories may be helpful "in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense."

*Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006).

(contention interrogatories directed to defendants' affirmative defenses not answered by defendants; court orders answers to contention interrogatories, on pain of exclusion of evidence supporting affirmative defenses).  See also *Kelly v. Fedex Ground Package System, Inc.*, 10-cv-01265, pp. 2 – 3 of 6 (Order, S.D. W. Va. Apr. 26, 2011) (Eilert, Cheryl, M.J.) (same; "While FedEx may not be able to discern every fact that supports an affirmative defense or denial, FedEx is capable of identifying those facts upon which it intends to rely in support of its affirmative defenses and denials[]"), *State v. Tyson Foods, Inc.*, 05-cv-329, pp. 6 – 7 of 13 (Order, N.D. Okla. Nov. 4, 2009) (Cleary, Paul, M.J.) (answers to contention interrogatories ordered;

> Indeed, Rule 33 expressly permits contention interrogatories that delve into opinion work product "because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed.R.Civ.P. 33(a)(2). Contention interrogatories, however, serve "to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D.Kan. 2000). The Advisory Committee Notes for the 1970 amendment to the Rule explains:
>
>> Efforts to draw sharp lines between facts and opinions have invariably been unsuccessful, and the clear trend of the cases is to permit "factual" opinions. As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery. On the other hand . . . interrogatories may not extend to issues of "pure law," i.e., legal issues unrelated to the facts of the case. Fed.R.Civ.P. 33(a)(2) advisory comm. n. (b).

State invited to submit petition for attorney fees and costs per Fed. R. Civ. P. 37.).

3. Defendants' Noncompliant Boilerplate Answers to Interrogatories

#2, #3, #4, and #18

Defendants' answers to interrogatories 2, 3, 4, and 18 impermissibly "regurgitate" Rule 26 language, *Mills*, p. 8 of 11 supra, and blend nonspecific objections under the Minnesota Government Data Practices Act. No explanation is given as to why one full answer may be "nonpublic data", or why another answer may be "confidential data," or why another answer may be "private data".

The defendants' answer to Interrogatory #1 identifies individuals with whom the defendants consulted in preparation of the answers. Incongruously, the defendants omit defendant Molin himself, and refuse to identify any lay witnesses whose identities, contact data, and expected testimony are sought in interrogatories #3 and #18. The defendants punctuate their answers to interrogatories #2 and #3, and their answers to interrogatory #18 by reference, as follows: "Defendants will not provide any further response." The defendants' answers to interrogatories 2, 3, 4, and 18 are evasive, incomplete boilerplate responses that violate Rules 26(b)(1) and 33(a – b), and require relief under Fed. Civ. 37(a – d), including reanswering the interrogatories, exclusion of evidence supporting defendants' alleged affirmative defenses, costs, and reasonable attorney fees. *Hemmingsen*, pp. 18 – 19, and *Kelly*, pp. 2 – 3, supra.

4. <u>Defendants' Wrongful Refusal to Answer Contention Interrogatories</u>[47]

Interrogatories #2 and #4 are contention interrogatories.  #2 seeks facts that underlie defendant Molin's affirmative defenses of qualified immunity and official immunity, and facts that underlie Crystal's affirmative defenses, including statutory immunity.  #4 seeks the precise clause of the City of Crystal personnel policy which the City found defendant Molin to have violated in his interaction with Mr. Scheffler.

Rule 33(a)(2) requires full, truthful answers to contention interrogatories that seek facts that support affirmative defenses and key assertions of a party.  *Lewton v. Divingnzzo*, 09-cv-2, pp. 2 - 3 of 4 (Order, D. Neb. Apr. 21, 2010) (Gossett, M.J.) (motion to compel granted, on pain of exclusion of affirmative defense evidence), <u>citing</u> *In re Grand Casinos, Inc., Sec. Litig*., 181 F.R.D. 615, 618 (D. Minn. 1998) (Erickson, Raymond L., M.J.).  Prefaced by impermissible boilerplate, Molin and Crystal, jointly and respectively, refuse to answer interrogatory #2: "**Defendants will not provide any further response.**"  Molin, who, in contrast to Crystal, may raise the affirmative defenses of qualified immunity and official immunity, need not know *every* fact on which he bases his affirmative defenses.  But he must set forth the facts he knows when answering the interrogatories, or suffer the consequences for not answering. *Kelly v. Fedex*

---

[47] Defendants may argue that contention interrogatories are more appropriate in later stages of discovery, as some cases cited above suggest.  The short discovery period of six months, and a deadline under the governing scheduling order of 30 August 2012, negate this anticipated objection.

*Ground Package System, Inc.*, 10-cv-01265, p. 3 (Order, S.D. W. Va. Apr. 26, 2011) (motion to compel granted), *State v. Tyson Foods, Inc.*, 05-cv-329, pp. 6 – 7 (Order, N.D. Okla. Nov. 4, 2009) (same; state invited to petition for attorney fees and costs).   The defendants, respectively and jointly, must answer interrogatory #2, and Mr. Scheffler is entitled to additional relief under Fed. R. Civ. P. 37, <u>infra</u>.

In answering interrogatory #6, Crystal cites chapter and verse of the Crystal personnel policy for its discipline of Molin in the <u>March 2008 incident involving a Crystal employee</u>: "**The City determined that Mr. Molin had violated Section 12.1 of the Workplace Conduct Policy for the aforementioned incident.**"[48]   In answering interrogatory #4 relating to the incident with Mr. Scheffler, defendants Molin and Crystal jointly and respectively state, "**The City did not find Mr. Molin in violation of any specific section of the personnel policy in the discipline memo.  Investigation and discovery are continuing.**"[49]

This answer from Molin and Crystal is confusing. The 3 December 2008 letter of Crystal's then-attorney, Kennedy & Graven's Michael Norton, states, "Ms. Norris advised you that disciplinary action against the employee, Jack Molin, was issued as a result of the investigation and that the discipline was based on violation of the City's personnel policy."[50]  Section 12.1 of the Crystal Workplace Conduct Policy states:

*It is the policy of the City of Crystal to maintain a respectful work*

---

[48] Nickitas Declaration Ex. 16, Defendants' Answers to Interrogatories, #6
[49] <u>Id</u>., Answer to Interrogatory #4
[50] Nickitas Declaration Ex. 27, Plaintiff's First Request for Admissions, Ex. 1

> *and public service [emphasis added] environment free from discrimination, harassment, violence, and other offensive or degrading remarks or conduct.  The City of Crystal will not tolerate such behavior by or toward any employee or officer.  Any employee or officer who engages in such behavior is subject to consequences."  ¶ 2 states, "This Workplace Conduct policy applies to all officials and employees of the City…"  ¶ 4 states, "Violent behavior includes the use of physical force, harassment or intimidation, or abuse of power or authority, when the impact is to control or cause pain, fear or hurt.  Violent behavior also includes verbal abuse."[51]*

City Manager Norris puts Mr. Molin on three-day suspension without pay for the incident with Mr. Scheffler, as stated in her 22 October 2008 letter:

> Your behavior in this incident involved using a loud voice and an aggressive demeanor in an attempt to control the actions of a customer. The expectation for all employees is that customers are to be treated with respect and courtesy. The conduct displayed during this incident is unacceptable.
>
> Earlier this year, you received a written reprimand for violation of the City's Workplace Conduct Policy. Because of this current incident and the incident in March of this year, I am suspending you without pay from work for three days. These days shall be October 28- 30, 2008.[52]

The City Manager alludes to the March 2008 incident *in pari materia* with the Scheffler incident as a violation of the Crystal Workplace Conduct Policy.  She describes Molin as "using a loud voice and an aggressive demeanor in an attempt to control the actions of a customer."[53]  This language tracks Crystal Workplace Conduct Policy § 12.1, ¶ 4, which prohibits violent behavior, verbal abuse, harassment, intimidation, or abuse of power or authority "when the impact is to control or cause pain, fear or hurt."  Thus, Molin's specific violation of Crystal's

---

[51] Nickitas Declaration Ex. 28, Crystal Workplace Conduct Policy
[52] Nickitas Declaration Ex. 17, Plaintiff's First Request for Admissions, Ex. 9 (emphasis added)
[53] Id.

Workplace Conduct Policy is spelled out in the 14 October 2008 City Manager's letter – which Crystal refused to produce in two pre-lawsuit Data Practices Act requests for access in 2008 and 2009[54] – and is denied in Molin's and Crystal's Answer to Interrogatory #6. The defendants, respectively and jointly, must answer this contention interrogatory under oath and affirmation, and suffer additional consequences under Fed. R. Civ. P. 37 for their evasive, misleading answer.

II. **Signature Requirement**

    A. <u>Fed. R. Civ. P. 33(b)(1(A), 3, 5)</u>

    Fed. R. Civ. P. 33(b)(1)(A) requires answers from the party to whom interrogatories are propounded. Fed. R. Civ. P. 33(b)(3) requires separate answers to each interrogatory under oath. Fed. R. Civ. P. 33(b)(5) requires the signature by the part(y/ies) to whom the interrogatories are propounded, with the signature of the attorney making any objections. <u>See</u> *Mills v. East Gulf Coal Preparation Co., L.L.C.,* 08-cv-260, pp. 8 – 9 of 11 (Order, S.D. W. Va. Aug. 4, 2009) (Vandervort, R. Clarke, M.J.) (USERRA case; multiple defendants failing to sign answers to interrogatories under oath:

> Defendants' responses to Plaintiff's written discovery are improper, not in conformity with the Rules and evasive. Defendants responded improperly to nearly every one of Plaintiff's Interrogatories and Requests for Production of Documents in issue by stating a general objection. To the extent that Defendants have responded to Plaintiff's discovery only in behalf of East Gulf Coal, the other Defendants have failed to respond at all. Plaintiff's written discovery was

---

[54] <u>See</u> Nickitas Declaration Ex. 29, Plaintiff's First Request for Admissions Ex. 11, Mr. Scheffler's Data Practices Act request on Crystal's prepared form ("All complaint and disciplinary records pertaining to Jack Molin")

> directed to each of the Defendants, and each of the Defendants were required to provide a separate response including separate verifications as the Rules require.

plaintiff invited to submit application for fees and costs for motion.)  See *Lewton v. Divingnzzo*, 09-cv-2, p. 2 of 4 (Order, D. Neb. Apr. 21, 2010 (Gossett, F.A., M.J.) (interrogatories directed to both defendants, who failed to sign answers; motion to compel signatures granted, subject to additional monetary or evidentiary sanctions, or both, for continued failure to sign).  See also *King v. Alabama Dep't of Public Health*, 09-cv-0503-WS-C, pp. 2 – 3 of 4 (Order, S.D. Ala. May 5, 2010)(Cassady, William, M.J.) (plaintiff ordered to sign late interrogatories under oath by date certain).

### B. Molin's Failure to Sign under Oath or Affirmation

Mr. Scheffler propounds nineteen interrogatories to both defendants, respectively and jointly.  Instruction #9 directs each defendant to specify which person provides information responsive to each discrete interrogatory, and to affirm the same.[55]  Interrogatories #1, #2, #4, #6 and #18 relate directly to Molin, as does Request for Production of Documents #1, which requests documents that support each defendant's respective and joint answers to the interrogatories.  City Manager Norris signs the interrogatories under affirmation on behalf of Crystal. Molin does not sign the answers to interrogatories, let alone affirm them.

Crystal and its attorneys state that Molin has nothing to offer in answers, let

---

[55] Nickitas Declaration Ex. 13, Plaintiff's First Set of Interrogatories upon Defendants

alone to affirm.   The defendants and counsel refuse to obtain Mr. Molin's signature under affirmation or oath. This defies his obligation to answer and sign under oath in accordance with Fed. R. Civ. P. 33(b)((1)(A), 3, and 5).   City Manager Norris cannot sign on behalf of Molin in answering Interrogatory #2, relating to his individual affirmative defenses, or any facts that would defeat the elements of his First Amendment claims.   She cannot state whether Mr. Scheffler was chilled or not chilled, nor can she state that Mr. Scheffler response to Molin's actions was that of an individual of "ordinary firmness,"[56] because she was not present.  She has no personal knowledge of facts, required by Fed. R. Evid. 602 of anyone attesting to facts under oath or affirmation.   She has no first-hand knowledge of the identity of all witnesses present at the time of the incident. Molin does have personal knowledge of any facts, if they exist, that would defeat Mr. Scheffler's claims or aid Molin's defenses.   The defendants violate Fed. R. Civ. P. 33(b) by Molin's refusal to sign interrogatory answers under affirmation or oath, and thereby subject themselves to consequences under Fed. R. Civ. P. 37.

III. **Data Practices Act and Litigation**

 A. Presumption of public classification

  The Minnesota Government Data Practices Act, Chapter 13 of Minnesota Statutes, exists to assure openness and accountability in government entity operations, and begins with the presumption that government data are public.

---

[56] *Garcia v. City of Trenton*, 348 F.3d 726, 728 – 29 (8th Cir. 2003) (plaintiff's First Amendment retaliation verdict aff'd [citations omitted])

Minn. Stat. §§ 13.01 subd. 3, 13.03 subd. 1.   Minn. Stat. § 13.43 governs "personnel data," government data pertaining to present, past, and prospective employees of government entitites.   Minn. Stat. § 13.43 subd. 2 prescribes public personnel data categories.   Minn. Stat. § 13.43 subd. 4 classifies residual personnel data as private data, subject to release by court order.

B. Final Disposition, Specific Reasons, and Supporting Data

Minn. Stat. § 13.43 subd. 2(a)(5) classifies the "final disposition" of disciplinary action against any public employee, as well as the specific reasons for the action and data documenting the basis of the action, as public data.   See Comm'r Admin. Op'ns 96-004 (reasons and documentation to be disclosed as public data respectively)[57] and 08-014 (changed to public data in spite of classification as private under other statute)[58], League of Minnesota Cities,

---

[57] Comm'r Admin. Op'n 96-004, p. 2:

> Mr. Anfinson asked whether the citation of those specific provisions of the City Code satisfied the "specific reasons" requirements of Section 13.43, subdivision 2(a), i.e., the specific reasons for final disciplinary action. It may well be the case that the employee's violation of a specific provision of Section 255:12 of the City Code constitutes the specific reason for any disciplinary action. If that is the case, then the City could meet its obligation to provide public access to the specific reasons for the disciplinary action, once the action is final, simply by citing the relevant provisions of the Code. (It would not, however, satisfy the City's obligation to provide public access to data which document the basis for the action.)

[58] Comm'r Admin. Op'n 08-014, p. 2:

> Data in the Minnesota Department of Education's (MDE) determination regarding a report of alleged student maltreatment that document the basis for the disciplinary action and the specific reasons for the disciplinary action are public under section 13.43,

*DataPractices: Analyze, Classify, Respond*, p. 30, League of Minnesota Cities, St. Paul, MN (March 2011). Minn. Stat. § 13.43 subd. 2(b) defines "final disposition" as a government entity's final decision on a disciplinary action, regardless of the possibility of later proceedings. <u>See</u> *City of Duluth v. Duluth Police Local*, 690 N.W.2d 357 (Minn. Ct. App. 2004) (arbitration award as final, regardless of possible motion to vacate or modify under MN and Fed Uniform Arbitration Acts).

  C. <u>Data Practices Rights Unchanged by Litigation</u>

  Individuals' right to access to data do not change because they sue the government entities from whom they seek access, nor can they be made to channel their requests through counsel.   <u>See</u> Comm'r Admin. Op'n 96-038 ("An individual's right to gain access to government data has been violated when, in response to a request for access to public data, a government entity takes the position that, because the requestor has initiated a lawsuit against the entity, the requestor can gain access to the public data only by acting through the requestor's attorney and in compliance with the rules of civil procedure[]"), 97-005 (same; prohibition against charging fee for data inspection), 04-074 (same).

---

   subdivision 2(a)(5). However, any of these data that identify District students, including the victim, and other District employees are private (see sections 13.32, 13.43, and 626.556, subdivision 11. In addition, any data in the report that do not document the basis for the disciplinary action or represent the specific reasons for the disciplinary action are private pursuant to section 626.556, subdivision 11.

D. <u>Crystal's Continuing Discovery and Data Practices Act Obstruction</u>

Mr. Scheffler requests access to all data concerning himself and discipline of Jack Molin on 9 October 2008. On or about 15 October 2008, he receives a letter dated 14 October 2008 from City Manager Norris informing him of the existence of the investigation of Mr. Molin's conduct on 3 October 2008, stating, "You will be notified of the completed investigation, to the extent permitted by Minnesota Data Privacy laws."[59] On or about 18 November 2008, he receives a follow-up letter dated 17 November 2008 from City Manager Norris, adding:

> As noted in my October 14 letter to you, the incident referenced in your complaint was being investigated. That investigation is now complete. Consistent with Minnesota Data Privacy laws, you are entitled to know that final disciplinary action was issued to Jack Molin as a result of this investigation and was related to his treatment of a customer as such behavior is a violation of the City's personnel policy.[60]

Mr. Scheffler follows up with a 22 November 2008 email to Ms. Norris. He reiterates his request for the final action:

> I received your letter stating that there was "final disciplinary action" issued concerning my October 9th complaint. I would like a copy of that action sent to my address below. I also received a letter from the city's claims adjuster stating per his investigation that Mr. Molin did nothing wrong by threatening me, physically touching me, intimidating me, and then calling the police on me. I am interested to find out what was determined in your investigation; 1 am assuming it was the same one.[61]

---

[59] Nickitas Declaration Ex. 6, Plaintiff's First Request for Admissions, Ex. 4
[60] Nickitas Declaration Ex. 7, Plaintiff's First Request for Admissions, Ex. 2
[61] Nickitas Declaration Ex. 8, Plaintiff's First Request for Admissions, Ex. 10

He receives the 3 December 2008 letter from Crystal's then-attorney, Michael Norton of Kennedy & Graven on or about 4 December 2008. In addition to his comments quoted above, Mr. Norton writes:

> Ms. Norris is not going to respond to the other statements in your November 22 email on my advice, since you have asserted a claim against the City of Crystal arising out of the October 3 incident. Please refer any further correspondence on this incident to me or the claims adjuster.[62] [emphasis added]

Crystal answers Mr. Scheffler's second request for access dated 11 September 2009 in a letter dated the 23rd of September. While stating Mr. Scheffler is not the subject of confidential data, Crystal adds:

> Regarding data pertaining to the incident that occurred on October 3, 2009 between Mr. Troy Scheffler and the City Building Official Jack Molin, Mr. Scheffler has received the information requested (video and letters dated October 14, 2008 and November 17, 2008).
>
> In conclusion, there is no data concerning Mr. Scheffler in Mr. Molin's personnel investigation. Other than the information previously provided to Mr. Scheffler concerning the final disposition of Molin's discipline, Mr. Molin's personnel file is private and cannot be released pursuant to Minn. Stat. § 13.43.[63]

After suing Crystal and propounding interrogatories and requests for production of documents, Mr. Scheffler finally learns of Crystal's three-day suspension of Molin – more than two-and-one-half years after his first request.[64] The letter describes an investigation by one Kim Therres, whose results Ms. Norris had reviewed in deciding on the three-day suspension. The letter describes the

---

[62] Nickitas Declaration Ex. 9, Plaintiff's First Request for Admissions Ex. 1
[63] Nickitas Declaration Ex. 12 (23 September 2009 Letter from Crystal City Clerk Janet Lewis)
[64] Nickitas Declaration Ex. 17, Plaintiff's First Request for Admissions Ex. 9

suspension as a final disposition.[65]   Defendants disclose no data from the Therres

investigation.  The copy of the 14 October 2008 letter disclosed in 2009 alludes to

emails to "Anne," "John", and "Kim," yet these are not disclosed.  The defendants

refuses to disclose any more, on the grounds the data are, indiscriminately, either

nonpublic, private, or confidential data.[66]

The disclosures lack the specific Crystal Workplace Conduct Policy

provision(s), reason(s) for the suspension, and data that document the basis for the

suspension, all of which are public data.   Minn. Stat. § 13.43 subd. 2(a)(5),

Comm'r Admin. Op'n 96-004 (requiring disclosure of the specific facts and

specific city code violated, plus data supporting the finding).  Mr. Norton's letter

is Crystal's admission that Crystal has wrongfully withheld public data from Mr.

Scheffler because of his litigation.  Comm'r Admin. Op'n 96-038 (violation of Act

to discriminate against litigants, or force litigants to request access through

counsel), Comm'r Admin. Op'n 97-005 (same), Comm'r Admin. Op'n 04-074

(same).  The defendants are in violation of Fed. R. Civ. P. 33(b) and Minn. Stat.

§§ 13.04 subd. 3 (public or private data concerning requestor), 13.03 subd. 3

(public data), and 13.43 subd. 2(a)(5) (final disposition of discipline, specific facts,

and data supporting the disposition as public data).

---

[65] Id.

[66] Nickitas Declaration Ex. 13, Defendants' Answer to Interrogatory #3. Entries in the defendants' privilege log corresponding to the incident – 11/24/08, 10/23/08, and 10/27/08 list "MGDPA Private, Confidential/ and/or Nonpublic Data" indiscriminately as the privilege basis.

IV. **Relief**

The Data Practices Act and Fed. R. Civ. P. 37 provide relief for Mr. Scheffler and accountability for the defendants' obstructions.

A. <u>Data Practices Act</u>

The Data Practices Act yields all manner of remedies for violations of the act – damages, exemplary damages, costs, and attorney fees under Minn. Stat. § 13.08 subd. 1, the full range of declaratory and injunctive relief to declare rights and enjoin past, present, and future violations of the act under Minn. Stat. § 13.08 subd. 2, and "mandamus relief" to compel compliance with the Act under Minn. Stat. § 13.08 subd. 4, along with award of costs, attorney fees, and a civil penalty up to $1,000.  <u>See</u> *Wiegel v. City of St. Paul*, 639 N.W.2d 378, 384 – 85 (Minn. 2002) (firefighter examination notes wrongfully withheld; attorney fee award permissive; "[W]e hold that when the government violates the Act by improperly denying a person access to data that the government is required by the Act to make available—that is, refuses to grant access to data that is available as a matter of right—the person denied access is an "aggrieved person" under section 13.08, subd. 4(a)"), *Johnson v. Carroll,* 658 F.3d 819, 828 (8th Cir. 2011) (remand to consider § 13.08 subd. 4 claim on account of Minneapolis' failure to answer plaintiff's request for access to data, notwithstanding lack of actual damages; settled).

Interrogatories #3 and #18, and the concomitant requests for production of documents #1 and #5, seek the final disposition of Mr. Scheffler's complaint, the

reasons for the disposition, and the data that support it. These are public data. Minn. Stat. § 13.43 subd. 2(a)(5), Comm'r Admin. Op'ns 96-004 and 08-014.

No need exists for a protective order to secure their release. No need exists for an *in camera* hearing under Minn. Stat. § 13.03 subd. 6 to examine the data, determine their relevance, and balance the interests Mr. Scheffler versus confidentiality interests of Crystal or the privacy interests of Mr. Molin. *Erickson v. MacArthur*, 414 N.W.2d 406 (Minn. 1987) (*in camera* hearing on internal affairs data in excessive force case), *Northern Inns Ltd. V. County of Beltrami*, 524 N.W.2d 721 (Minn. 1994) (relevance test), *EOP-Nicollet Mall, L.L.C. v. County of Hennepin*, 723 N.W.2d 270 (Minn. 2006) (balancing test). Crystal refuses to answers these interrogatories and wrongfully withholds documents responsive to these requests, notwithstanding the fact that City Manager Norris's 22 October 2008 letter alludes to the existence of data examined in Crystal's final disposition.[67] The undisclosed public data appears to identify witnesses and relevant information that relate to Mr. Scheffler's First Amendment claims. Minn. Stat. § 13.08 subd. 4 furnishes the remedy that Mr. Scheffler seeks – compelled disclosure, with award of costs and attorney fees, and a possible civil penalty. *Wiegel*, 639 N.W.2d at 384 – 85, *Johnson*, 658 F.3d at 828 – 29.

---

[67]Nickitas Declaration Ex. 13, Defendants' Answer to Plaintiff's First Set of Interrogatories, Nickitas Declaration Ex. 21, Defendants' Surreply, p. 2 ("Defendants stand by their objections and responses to Interrogatories Nos. 2, 5, 6, 7, 9, I 0,12, 13, 14, 15~ 16, 17,and 19[]").

Interrogatory #17 and Request for Production #6 seek evidence relating to a March 2008 incident in which Crystal disciplined Mr. Molin for harassing a co-worker.  Crystal produces a memorandum that sets forth the final disposition, but no data that detail the facts supporting the disposition or supporting data.[68] The memorandum alludes to supporting data.  These are public data.  Minn. Stat. § 13.43 subd. 2(a)(5).

Evidence of a prior wrongful, retaliatory act, similar in nature to plaintiff's claim, is relevant to prove motive and intent under Fed. R. Evid. 404(b). *Duckworth v. Ford*, 83 F.3d 999, 1001 – 02 (8th Cir. 1996) (First Amendment retaliation; plaintiff's verdict aff'd), *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (plaintiff's racial discrimination and retaliation verdict aff'd), *Holcomb v. Powell*, 433 F.3d 889, 893 (D.C. Cir. 2006) (summary judgment rev'd on retaliation claim), *Buckley v Mukasey*, 538 F.3d 306, 318 – 19 (4th Cir. 2008) (error under 404(b) to exclude evidence of animus for plaintiff's past role as witness in racial discrimination case; remanded).

The memorandum reprimands Molin for "using a loud voice, foul language, and an aggressive demeanor to control the actions of a co-worker."  This is similar verbiage to that describing Molin's actions against Mr. Scheffler.  The public data on the basis of the final disposition and supporting data are relevant to prove

---

[68] Nickitas Declaration Ex. 13, Defendants' Answer to Plaintiff's First Set of Interrogatories #16, Nickitas Declaration Ex. 14, Defendants' Answer to Plaintiff's First Request for Production of Documents, Nickitas Declaration Ex. 30, 1 April 2008 Memorandum from City Manager Anne Norris to Jack Molin

motive, absence of mistaken, and intent to intimidate, control, and thus <u>chill</u> Mr. Scheffler's exercise of rights of freedom of speech and petition for redress of grievances against Molin.  Fed. R. Evid. 404(b), *Duckworth*, 83 F.3d at 1001 – 02, *Goldsmith*, 513 F.3d at 1286, *Holcomb*, 433 F.3d at 893, *Buckley*, 538 F.3d at 318 – 19.  Crystal must disclose these data in accordance with Minn. Stat. §§ 13.43 subd. 2(a)(5) and 13.08 subd. 4(a), in addition to Fed. R. Civ. P. 26(b)(1), 33(b), and 34.[69]

B. <u>Fed. R. Civ. P. 37(a)(1 - 3), with reference to 37(d) and 37(b)(2)(A - C).</u>

Upon motion after unsuccessful efforts to meet and confer to resolve the defendant's discovery deficiencies, Fed. R. Civ. P. 37(a) authorizes an aggrieved party to move to compel discovery of wrongfully withheld documents and incomplete, or evasive interrogatories.  Rule 37(a)(5) authorizes the court to enter protective orders, and requires the court to award costs and reasonable attorney fees, if (a) disclosure takes place after filing and service of the motion, or (b) the court grants the motion, unless nondisclosure was "substantially justified.  <u>See</u> *Burke v. Messerli & Kramer, P.A.*, 09-cv-1630 (D. Minn., June 10, 2010) (Boylan, Arthur, M.J.) (order on motion to compel answers to interrogatories with award of attorney fees), *Hemmingsen v. Messerli & Kramer, P.A.,* 09-cv-1384 (D. Minn.

---

[69] Similarly, the basis for the decision to suspend Mr. Molin for five days in September 2010, and the supporting data, disclosed in Answer to Interrogatory #17 and Answer to Request for Production of Documents #7 are public data and relevant under Fed. R. Evid. 404(b) as to motive and intent to "chill" Mr. Scheffler.  Plaintiff has proposed a Protective Order using Form 6 as a template, but defendants have rejected it, making this motion necessary.  Nickitas Declaration Ex. 21, Defendants' "Surreply".

May 12, 2010) (Boylan, Arthur, M.J.)(same), *Int'l Broth. Of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.,* 380 F.3d 1084, 1105 (8th Cir. 2004) (default sanction upheld in case of evasive or incomplete answers), *Lewton v. Divingnzzo*, 09-cv-2, (Order, D. Neb. Apr. 21, 2010 (Gossett, F.A., M.J.) (failure of both defendants to sign answers; motion to compel signatures granted, subject to additional monetary or evidentiary sanctions, or both, for continued failure to sign), *King v. Alabama Dep't of Public Health*, 09-cv-0503-WS-C, pp. 2 – 3 of 4 (Order, S.D. Ala. May 5, 2010) (Cassady, William, M.J.) (motion to compel answers to interrogatories granted), *Mills v. East Gulf Coal Preparation Co., L.L.C.,* 08-cv-260, pp. 8 – 9 of 11 (Order, S.D. W. Va. Aug. 4, 2009) (same; invitation to petition for costs and fees), *State v. Tyson Foods, Inc.*, 05-cv-329, pp. 6 – 7 of 13 (Order, N.D. Okla. Nov. 4, 2009) (motion granted to compel answers to contention interrogatories; invitation to petition for costs and fees).

Mr. Scheffler moves to compel answers to interrogatories and concomitant document requests resting on public data. The defendants resist. He moves to compel Mr. Molin's separate signature under oath. He moves to compel answers to contention interrogatories #2 and #4 that the defendants refuse to answer with anything but boilerplate. Mr. Molin's refusal to sign interrogatory answers under oath, defendants' evasive, incomplete boilerplate answers to interrogatories #2, #3, #4, #18, and #19 in particular, and their incomplete answers to document requests #1, #5, and #7 require Rule 37(a) remedies of an order to compel and the award of costs and attorney fees.

34

## CONCLUSION

The Court should compel defendants' full, complete answers to interrogatories #2, #3, #4, #18, and #19 in particular, and all incomplete interrogatories answers collectively, defendants' full complete answers to document requests #1, #5, and #7, compel the signature of defendant Molin, under oath to the answers to interrogatories, and award costs and attorney fees in accordance with LR D. Minn. 54.3.

17 June 2012                              Respectfully submitted:

PETER J. NICKITAS LAW OFFICE, LLC

/s/ *Peter J. Nickitas*

_____
Peter J. Nickitas, MN Att'y #212313
Attorney for the plaintiff
431 S. 7th St., Suite 2446
P.O. Box 15221
Minneapolis, MN 55415-0221
651.238.3445/FAX 1.888.389.7890
peterjnickitaslawllc@gmail.com