## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Troy K. Scheffler,                                    Civ. No. 11-3279 (JNE/JJK)

               Plaintiff,

v.

Jack Molin, in his individual capacity
acting under color of law as a Crystal          **ORDER**
Building Inspector, and City of Crystal,
Minnesota,

               Defendants.

      This matter is before the Court on two non-dispositive motions that Plaintiff

Troy K. Scheffler's filed: (1) Plaintiff's Motion to Compel Discovery (Doc. No. 18);

and (2) Plaintiff's Motion to Enlarge Scheduling Order and to Amend the

Complaint in Accordance with Fed. R. Civ. P. 16(b) and Fed. R. Civ. P. 15(a)

(Doc. No. 24).  On July 11, 2012, the Court held a hearing on these motions, and

the parties' counsel presented oral argument.  Based on Scheffler's motions,

Defendants' response, the hearing, the record, and all the files and proceedings

therein, and for the reasons that follow in the accompanying Memorandum, **IT IS**

**HEREBY ORDERED** that:

      1.    Plaintiff's Motion to Compel Discovery (Doc. No. 18), is **GRANTED**

**IN PART** and **DENIED IN PART**, as stated in the attached Memorandum;

      2.    Plaintiff's Motion to Enlarge Scheduling Order and to Amend the

Complaint in Accordance with Fed. R. Civ. P. 16(b) and Fed. R. Civ. P. 15(a)

(Doc. No. 24), is **DENIED**; and

    3.    The accompanying Memorandum is incorporated in this Order by reference.

Date: August 10, 2012                s/Jeffrey J. Keyes
                                            Jeffrey J. Keyes
                                            United States Magistrate Judge

## MEMORANDUM

This case involves an incident that occurred in the fall of 2008 at the City of Crystal City Hall.  On October 3, 2008, Plaintiff Troy K. Scheffler attempted to assist a homeowner in discovering why a City of Crystal (the "City") building inspector left a "red tag stop work" order in the homeowner's property.  (Doc. No. 1, Compl. ¶ 14.)  Scheffler went to City Hall to discuss the stop work order with a City employee.  (*Id.* ¶ 19.)  During Scheffler's conversation with the City employee, Defendant Jack Molin, a City Building Inspector, intervened.  (*See id.* ¶¶ 31–49.)  Molin became angry with Scheffler and yelled at him, referring to Scheffler several times as a "criminal."  (*See id.* ¶¶ 31–40.)  When Scheffler requested information from another City employee about how to lodge a complaint against Molin for his rude behavior, Molin threatened to contact the police.  (*Id.* ¶¶ 50–58.)  Based on these events, Scheffler asserts claims against Molin and the City (collectively "Defendants"), under 42 U.S.C. § 1983, for violating his First Amendment rights of free speech and to petition the

2

government for redress of grievances.  He also brings state law claims against

Defendants for defamation.  (*Id.* ¶¶ 86–93.)

About a week after the incident described above, on October 9, 2008,

Scheffler filed a notice of claim with the City concerning the incident.  (Compl.

¶ 82.)  The City's response to Scheffler's notice of claim and to his subsequent

requests for information about that claim motivate Scheffler's current effort to

amend his Complaint; he requests leave to add a claim that the City violated the

Minnesota Government Data Practices Act ("MGDPA").  In the weeks after

Scheffler filed the notice of claim, he requested information about the status of

the City's investigation of the incident, its outcome, and the support for any

decision the City reached.  (Doc. No. 24, Pl.'s Mot. to Enlarge Scheduling Order

and to Am. Compl. ("Pl.'s Mot. to Am."), Attach. 1 at ¶¶ 86–95.)  After the City

acknowledged that an investigation was underway, the City's adjuster told

Scheffler that his claim lacked merit.  (*Id.* ¶ 90.)  In November 2008, however, the

City apparently changed its tune, and wrote to Scheffler only that it had taken

"final disciplinary action" against Molin as a result of its investigation.  (*Id.* ¶ 91.)

Unsatisfied with the City's explanation, Scheffler persisted, requesting additional

information concerning the nature of that final disciplinary action and the

information that supported the City's decision.  (*Id.* ¶¶ 92–93.)  On December 4,

2008, the City's outside counsel indicated that the City would not provide

Scheffler any further information because it had, in its view, complied with its

obligations under the MGDPA.  (*Id.* ¶ 94.)  More than three years later, and after

3

he filed this lawsuit in late 2011, Scheffler finally learned through the City's

responses to his discovery requests that Molin had been suspended for three

days without pay because the City considered his behavior to be an

inappropriate "attempt to control the actions of Mr. Scheffler."  (*Id.* ¶¶ 101–04.)

Scheffler now claims that the City's failure to disclose this and other information

sooner violates the MGDPA and entitles him to damages.  (*Id.* ¶¶ 130–40.)

Scheffler moves to amend his Complaint to add this MGDPA claim, and he

moves to compel the City to provide additional information that he believes the

City has unlawfully withheld in response to his discovery requests.

## I.   PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER TO ALLOW AMENDMENT OF THE COMPLAINT

The Court first addresses Scheffler's motion seeking to modify the

Scheduling Order so that he may amend his Complaint to add an MGDPA claim.

The deadline to amend pleadings in this case was April 30, 2012.  (Doc. No. 12,

Pretrial Scheduling Order.)  Because Scheffler seeks to amend his Complaint

after the deadline for amending pleadings expired,[1] the "good cause" standard of

Rule 16(b) applies to his motion to amend.  *Equal Empl. Opp. Comm. v. Hibbing

Taconite, Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009) (stating that because the

deadline to amend pleadings has expired under court's scheduling order the

movant is required to show good cause for leave to amend); *see also Freeman v.*

---

[1]   Scheffler filed his motion on June 27, 2012.  (Doc. No. 24, Pl.'s Mot. to Am.)

*Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (holding that when a party has filed a motion to amend after the deadline provided in a court's pretrial scheduling order, the court may properly require that good cause be shown under Fed. R. Civ. P. 16(b)).

The good cause standard is exacting. *Hibbing Taconite, Co.*, 266 F.R.D. at 265. It "requires a demonstration that the Scheduling Order cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quotations omitted). And "the question of good cause [does not] turn on the existence or absence of prejudice to the non-moving party." *Id.* (quoting *Scheidecker v. Arvig Enters., Inc.*, 193 F.R.D. 630, 631–32 (D. Minn. 2000)).

Scheffler argues that he should be entitled to amend his Complaint despite the expiration of the Scheduling Order's April 30, 2012 deadline because he did not receive information about the specific disciplinary action the City took against Molin or the reasons for that decision until May 12, 2012, after that deadline had expired. According to Scheffler, he did not know the City even had additional information until that date, when the City disclosed a letter explaining the nature of its discipline of Molin and giving a reason for that decision. Thus, he argues, it would have been imprudent to bring any claim under the MGDPA before he received that letter.

Based on the record, however, the Court concludes that Scheffler could have asserted his MGDPA claim well before the expiration of the Scheduling Order's deadline for amending pleadings. Scheffler made his initial MGDPA

5

request for access to data regarding the City's disciplinary investigation of Molin

on October 9, 2008.  (Doc. No. 20, Decl. of Peter J. Nickitas ("Nickitas Decl.")

¶ 3(2), Ex. 2 at 23.)  Six days later, the City responded, telling Scheffler that it

started its investigation.  (*Id.* ¶ 3(2), Ex. 2 at 13.)  Then, on November 12, 2008,

the City's adjuster stated that there was no basis for Scheffler's claim.  (*Id.* ¶ 3(2),

Ex. 2 at 11.)  But on November 17, 2008, the City told Scheffler that it had

completed its investigation, issued final disciplinary action toward Molin (though it

did not say what that action was or provide any information supporting the

decision), and determined that Molin's treatment of Scheffler violated the City's

personnel policy.  (*Id.* ¶ 3(2), Ex. 2 at 9.)  On November 22, 2008, Scheffler told

the City he wanted more information.  He explained that he had not been

provided any copy of the action and was merely told that there was "final

disciplinary action."  (*Id.* ¶ 3(2), Ex. 2 at 29.)  Then, on December 4, 2008, the

City's attorney sent Scheffler a message stating that the City had provided

Scheffler everything it was required to provide under the MGDPA and could not

legally give him additional data.  (*Id.* ¶ 3(2), Ex. 2 at 7.)  Ten months later, in

September 2009, Scheffler's counsel requested additional information about the

investigation, citing the MGDPA.  (*Id.* ¶ 3(11), Ex. 11.)  In response, the City

disclosed some information Scheffler had already received, but maintained its

position that information relating to Molin's personnel investigation could not be

released under the relevant provisions of the MGDPA.  (*Id.* ¶ 3(12), Ex. 12.)

      The only reasonable reading of this history is that at least as early as

December 4, 2008, Scheffler believed he was entitled under the MGDPA to receive more information than the City was giving up.  This reading is supported by the allegations in Scheffler's proposed Amended Complaint.  In that proposed amended pleading, Scheffler asserts that as of December 4, 2008, he had not received the final disposition of the disciplinary action against Molin, the reasons for that decision, or the supporting data, and he asserts that the City's refusal to provide this information violated the MGDPA.  (Doc. No. 24, Pl.'s Mot. to Am., Attach. 1 at ¶ 95.)  Under Minn. Stat. § 13.43, certain data on government personnel is public and subject to disclosure.  Among this public data is "the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action, excluding data that would identify confidential sources who are employees of the public body."  *Id.*, § 13.43, subd. 2(a)(5).  Scheffler's proposed MGDPA claim asserts that the City violated this provision when it did not provide him with the specific nature of the final disposition of its disciplinary action against Molin, the reasons for that decision, or the data supporting that decision when it rather tersely responded to his MGDPA request.  It strains credulity for Scheffler to now argue that he had no prudent basis to assert that the City violated the statute back in December 2008.  In fact, he essentially told the City it was not complying with its legal disclosure obligation in his November 22, 2008 email to a City employee.  This is not to say that the Court has formed any opinion about the merits of Scheffler's MGDPA claim.  But that claim runs much deeper into the past than the Scheduling Order's

7

deadline for amending pleadings.

The City's May 12, 2012 disclosure of a letter in response to Scheffler's discovery in this case, which included additional information about the results of its investigation, may have confirmed for Scheffler that the City indeed had additional information about its investigation all along.  But asserting a non-frivolous claim that a government authority has unlawfully withheld public data does not require absolute certainty that more information exists.  The City's responses to his requests provided a reasonable basis for him to conclude that there was additional information that was not being disclosed, and the City never suggested that it had turned over all the data it had that was responsive to those requests.  When the City simply told him it had reached a decision in December 2008, Scheffler could have brought an action to compel compliance with the MGDPA under Minn. Stat. § 13.08, subd. 4.  He could also have asserted such a claim in September 2009, when the City rebuffed his attorney's request for more information.  And he could have asserted that claim when he filed this lawsuit several years later at the end of 2011.  Instead, he waited to assert his MGDPA claim until after the deadline to amend the pleadings expired and never asked for an extension of that deadline.  This fails to demonstrate that despite his diligence he could not have complied with the Scheduling Order.  Instead, it suggests that his MGDPA claim is an afterthought.  Accordingly, Scheffler has not shown good cause to modify the Scheduling Order, and the Court denies his motion to

expand the deadline for leave to amend the Complaint.[2]

## II.    PLAINTIFF'S MOTION TO COMPEL DISCOVERY

### A.    Discovery Obligations in Federal Litigation and the Minnesota Government Data Practices Act

There appears to be some confusion among the parties about the interplay between the Federal Rules of Civil Procedure and the Minnesota Government Data Practices Act ("MGDPA").  In their memoranda, the parties disagree about whether the City was obligated to produce certain information in response to Scheffler's requests for data under the MGDPA.  The parties also dispute whether, in response to Scheffler's discovery requests in this litigation, the City properly objected to disclosure of certain information on grounds that the MGDPA prohibits the data's disclosure.  This latter focus, however, distracts from the question a court must ask in determining whether a party has complied with its discovery obligations in a federal lawsuit.  The relevant question is whether the requesting party is entitled to the information sought under the Federal Rules of Civil Procedure, not under the MGDPA.

---

[2]    On July 31, 2012, the Court gave Scheffler's counsel permission to file a letter sent to the Court concerning what he characterizes as the City's continued refusal to provide information allegedly in violation of the MGDPA.  (Doc. No. 48.) The Court also permitted Defendants to file a letter in response, which they did on August 1, 2012.  (Doc. No. 49.)  Scheffler's letter is essentially a refrain of his argument that the City is violating the MGDPA and that this entitles him leave to amend his Complaint to add a claim under that Minnesota statute.  Nothing in Scheffler's letter provides good cause for the failure to seek leave to amend before the expiration of the Scheduling Order's applicable deadline.

At the hearing and in its discovery responses, the City states that it will not turn over certain information that Scheffler requested during discovery voluntarily because the MGDPA prohibits it from disclosing that information unless ordered to do so by a court.  Taken to its logical conclusion, the City's argument would mean that whenever a Minnesota government authority covered by the MGDPA is a defendant in a federal lawsuit, that defendant's discovery obligations would cease if information arguably protected under the MGDPA were requested in an interrogatory under Rule 33 or request for production under Rule 34.  Motions to compel discovery would be required to obtain any potentially protected information.[3]  Such an outcome would frustrate a prominent feature of the litigation scheme established by the Federal Rules of Civil Procedure, i.e., that all litigants are obligated to provide certain information to their opponents even in the absence of a court order.  *Cf. Equal Empl. Opp. Comm. v. Hennepin County*, 623 F. Supp. 29, 32 (D. Minn. 1985) (concluding that a congressional scheme established through a federal statute permitting the EEOC to subpoena

---

[3]      This indeed may be the result contemplated by analysts within the Minnesota House of Representatives Research Department:

> In a lawsuit, arbitration, or administrative action, parties may seek discovery of government data or have a court order for release of data.  The responsible authority will refuse to comply if the data are classified as not public.  The party seeking release may then bring an action to compel discovery.

Matt Gehring, Legislative Analyst, *Information Brief: Minnesota Government Data Practices Act an Overview* 10 (July 2010), http://www.house.leg.state.mn.us/hrd/pubs/dataprac.pdf.

information would be frustrated if the MGDPA were interpreted to require a party to obtain a court order to obtain information despite that subpoena power).

It is axiomatic that discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure, not by state rules governing access to information.  *See* 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2005 (3d ed. 2010) (noting that state discovery rules are irrelevant to issues of discoverability of information in federal litigation).  State law can apply the substantive rule of decision where a privilege is concerned, *see* Fed. R. Evid. 501, but there is nothing to suggest that the MGDPA's classification of public and private data creates some independent evidentiary privilege.  The MGDPA tells Minnesota government authorities what information they must and must not disclose when a request is made under the MGDPA. What it does not do is trump the Federal Rules of Civil Procedure, which define what information is discoverable in a federal lawsuit such as this.  For these reasons, it is improper for Defendants to withhold information from proper discovery in a federal lawsuit purely on grounds that it is protected under the MGDPA.

## B.    The Discovery In Dispute

The Court now turns to the specific discovery requests properly before the Court in Scheffler's Motion to Compel.  Scheffler seeks additional information from Defendants in response to certain interrogatories and document requests. In this District, when a party files a discovery motion, it must provide a verbatim

11

recitation of the specific discovery in dispute in the motion itself or in the

accompanying memorandum, or a copy of the actual discovery that is the subject

of the motion.  D. Minn. Loc. R. 37.2.  If such a motion "involv[es] interrogatories

[and] document requests[,] the moving party's memorandum shall set forth only

the particular interrogatories [and] document requests . . . which are the subject

of the motion, the response thereto, and a concise recitation of why the response

or objection is improper."  *Id.*  Thus, a motion such as this must make sure that

the discovery in dispute is provided word for word somewhere in the record, that

the nature of the dispute and the argument supporting disclosure is set out

clearly in the memorandum accompanying the motion, and that the

memorandum is limited to the precise issues the moving party wants the Court to

resolve.

This specificity requirement does not exist simply to make matters more

difficult for attorneys and litigants embroiled in a discovery dispute.  It exists so

that litigants can quickly define the parameters of the dispute and so that the

Court can deal with the disagreement efficiently, render a decision promptly, and

permit the parties to move the litigation forward.[4]  The Court has no interest in

---

[4]     The Court notes that after taking this matter under advisement Scheffler
filed a Motion to Continue Defendants' Fed. R. Civ. P. 56(c) Motion in
Accordance with Fed. R. Civ. P. 56(f), arguing that because these matters are
under advisement, and Scheffler may receive some discovery as a result of his
motion to compel, the District Court should hold off on resolving Defendants'
summary judgment motion.  (Doc. No. 39.)  Had Scheffler appropriately
presented the discovery dispute in accordance with the Local Rule concerning
                                    (Footnote Continued on Following Page)

elevating form over substance, but counsel who practice in this District would be well advised to think carefully about whether their moving papers conform to Local Rule 37.2[5] and whether the Court can easily understand what it is being asked to do.

With respect to certain requests, Scheffler's compliance with Local Rule 37.2 is questionable.  It is not precisely clear what discovery Scheffler seeks because the Memorandum supporting his Motion to Compel obliquely references numerous discovery requests and sets out a subset of those requests verbatim and provides specific argument with respect to only some requests.  (*See* Doc. No. 19, Pl.'s Mem. of Law in Supp. of Mot. to Compel Disc. ("Pl.'s Mot to Compel Mem.") *passim.*)  In the Memorandum's first paragraph, Scheffler states that he moves the Court to compel answers to fifteen separate interrogatories and two document requests.  (*Id.* at 1–2.)  He later suggests that he is really only concerned about six of the alleged deficiencies in Defendants' responses to his interrogatories, and he does not set forth a single document request verbatim in

_____

(Footnote Continued from Previous Page)
the form of discovery motions, the Court may have been capable of giving the parties a ruling from the bench.

[5]     At the time Scheffler filed his motion to compel, the Local Rule concerning the form of discovery motions in this District was Local Rule 37.2.  Since that time, however, Local Rule 37.2 has been renumbered as Local Rule 37.1 along with other changes to the Local Rules.  The Court refers in this Order to the former Local Rule 37.2 as it governed Scheffler's motion at the time it was filed, but the Court also notes that the same considerations apply to the form of discovery motions under the renumbered Local Rule 37.1.

the Memorandum, though he refers to them by number and includes some reference to Defendants' responses.  (*Id.* at 8–11, 13.)  Then, in the conclusion of his thirty-five-page Memorandum, Scheffler suggests he wants complete answers to "all incomplete interrogatories answers collectively," identifies a different set of three document requests than those identified in his introduction, and requests other relief.  (*Id.* at 35.)  Thus, Scheffler's briefing unfortunately presented a confused picture of the discovery dispute he wants the Court to resolve.  Accordingly, in this Order the Court will only address the interrogatories and document requests that it believes Scheffler fairly identified and presented argument on in compliance with Local Rule 37.2 – Interrogatory Nos. 2, 3, 4, 18, and 19; and Document Request Nos. 1 and 8.[6]

    In resolving whether Scheffler is entitled to the discovery he sought through these requests, the Court is guided by the following standards. A discovery request is relevant unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  *See Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992). "The party resisting production bears the burden of establishing lack of relevancy or undue burden."  *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

_____

[6]    The Court will not address Interrogatories 5, 8-12, or 14, or Document Requests 5 and 7.  Scheffler has failed to present any specific argument that he is entitled to the discovery these requests seek.

### *Interrogatory No. 2*

In Interrogatory No. 2, Scheffler asks Defendants to identify the factual

basis supporting the various affirmative defenses identified in their Answer to his

Complaint and to identify the specific provision of the City's personnel policy that

the City determined was violated by Molin's conduct in the October 8, 2008

incident.  The City objects on several grounds and asserts that it will not provide

any further response.  Scheffler argues that this is a proper contention

interrogatory.  Defendants respond that they may postpone their response to this

contention interrogatory under Rule 33 of the Federal Rules of Civil Procedure

and that the interrogatory is overly broad because it asks for all facts supporting

their affirmative defenses.

The Court concludes that Interrogatory No. 2 is a proper contention

interrogatory and Defendants must make a response setting forth the basis for

their affirmative defenses.  *See* Fed. R. Civ. P. 33, Advisory Committee Notes,

1970 Amendments.  While some of the affirmative defenses Defendants raised in

their Answer, such as failure to state a claim for which relief can be granted,

involve "issue of 'pure law'" not requiring any identification of facts, *see id.*,

Advisory Committee Notes, 1970 Amendments, others, such as contributory

negligence,[7] are factually dependent, and Scheffler is entitled to know the basic

---

[7]     It is not clear to the Court whether the defense of contributory negligence
would even apply to Scheffler's First Amendment or defamation claims.  It may
be that these defenses were simply included in Defendants' Answer as part of a
(Footnote Continued on Following Page)

facts Defendants will present at trial in support of those defenses.  However, as

Defendants point out in their response, they need not provide their answer to

such a contention interrogatory immediately.  *See id.*, Advisory Committee Notes,

1970 Amendments ("Since interrogatories involving mixed questions of law and

fact may create disputes between the parties which are best resolved after much

or all of the other discovery has been completed, the court is expressly

authorized to defer an answer.").  In light of these observations, the Court grants

Scheffler's motion in part.  Defendants must answer Interrogatory No. 2 and

provide Scheffler with the factual basis for any affirmative defense they intend to

rely on at trial no later than August 30, 2012, which is the close of fact discovery.

### ***Interrogatory Nos. 3 and 18***

In Interrogatories 3 and 18, Scheffler asks Defendants to identify all the

individuals they have interviewed or questioned in connection with the events

giving rise to this lawsuit.  Defendants object on relevancy grounds and assert

that these interrogatories seek information protected from public disclosure by

the MGDPA.  The identity of the individuals interviewed by the City and Molin

certainly has a reasonable likelihood to lead to the discovery of admissible

evidence.[8]  And as noted above, the privacy provisions of the MGDPA do not

_____

(Footnote Continued from Previous Page)
standard pleading.

[8]     The Court notes that Defendants did not interpose any objection to these
interrogatories on the basis of the work-product doctrine.

define the scope of permissible discovery in a federal lawsuit.  Scheffler's motion is granted to the extent it requests amendment of these answers.  The Court, therefore, overrules Defendants' objections to Interrogatory Nos. 3 and 18, and Defendants must amend their response to these discovery requests within fourteen days of the date of this Order.

### *Interrogatory No. 4*

In Interrogatory No. 4, Scheffler asks Defendants to identify the specific provision of the City's personnel policy that it found Molin violated during the October 2008 incident giving rise to this lawsuit.  Defendants object to this request on several grounds, but answered the request as follows: "The City did not find Mr. Molin in violation of any specific section of the personnel policy in the discipline memo."  (Doc. No. 20, Nickitas Decl. ¶ 3(20), Ex. 20 at 6.)  The Court finds that Defendants have, therefore, already answered this interrogatory.  The Court cannot compel Defendants to amend their answer to this interrogatory, as Scheffler's argument suggests they should, to identify the provision of the personnel policy that best fits the conduct Molin engaged in.  That is plainly not the question Scheffler asked.  Thus, Plaintiff's request to compel Defendants to answer Interrogatory No. 4 is denied.

### *Interrogatory No. 19*

In Interrogatory No. 19, Scheffler asks Defendants to identify all documents, recordings, and other data that the City examined in connection with the incident between Molin and Scheffler.  Defendants interpose several

objections to this interrogatory including relevancy, vagueness, undue burden,

privilege and work-product, and that the information sought is private under the

MGDPA.  Again, for reasons explained above, Defendants cannot rely on the

MGDPA to withhold any information responsive to this request.  The request is

not vague or overly broad.  Nor have Defendants shown that responding to this

request would be unduly burdensome for them.  The Court finds that the

information sought by Interrogatory No. 19 is reasonably likely to lead to the

discovery of admissible evidence, and, accordingly, Defendants' relevancy

objection is overruled.  To the extent Defendants have not identified responsive

information withheld under the attorney-client privilege or the work-product

doctrine on a privilege log, they must prepare such a privilege log and provide it

to Scheffler and his counsel.  Consistent with the foregoing, Scheffler's motion is

granted with respect to Interrogatory No. 19 to the extent that Defendants must

amend their response within fourteen days of the date of this Order.

### *Document Request No. 1*

In Document Request No. 1, Scheffler asks Defendants to produce

documents responsive to his first set of interrogatories to Defendants.  Again,

Defendants improperly object to disclosure on grounds that the MGDPA protects

certain information from disclosure.  They also object that the information sought

is not relevant.  Based on Scheffler's Memorandum (Doc. No. 19, Pl.'s Mot. to

Compel Mem. 12–13), his counsel's comments on the record at the hearing, and

the entire record before the Court, the Court concludes that Scheffler is asking

for Defendants to produce the City's file concerning the investigation of the October 2008 incident.  Although Defendants argue that the relevance of this information to Scheffler's claims is tangential, the Court finds that it is reasonably likely to lead to the discovery of admissible evidence.  Therefore, the Court grants Scheffler's motion with respect to Document Request No. 1 to the extent it seeks production of the City's investigative file for the October 2008 incident, and any documents Molin has in his possession, custody, or control that relate to that incident.

### *Document Request No. 8*

In Document Request No. 8, Scheffler asks Defendants to disclose Molin's W-2 tax forms from 2008–2011; he argues that evidence of Molin's income is relevant to proving punitive damages.  Defendants refuse to provide this information claiming that it is protected from disclosure by the MGDPA and that it is not relevant.  Defendants also argue that Molin has a privacy interest in his W-2 forms, that the City has already provided Scheffler with information about Molin's annual salary and his benefits, and that the request is inappropriate because the City is defending and indemnifying Molin in this action.  Defendants' arguments are not persuasive.  Most importantly, Defendants have not shown that Molin's W-2 forms are not reasonably likely to lead to the discovery of admissible evidence concerning the scope of any punitive damages.[9]

---

[9]     Because Scheffler brought claims under 42 U.S.C. § 1983, he could
(Footnote Continued on Following Page)

Accordingly, the Court orders Defendants to disclose these forms to Scheffler within fourteen days of the date of this Order.

## C.   Additional Discovery Disputes

Scheffler raises two additional discovery-related issues in his Motion to Compel.  He asserts that Molin should be required to sign and verify interrogatory responses.  And he also asks the Court to enter a protective order so that the City can disclose information it feels is protected under the MGDPA.  In addition, Scheffler seeks recovery of the expenses incurred in bringing his motion to compel.

### *Molin's Signature*

Scheffler served his First Set of Interrogatories on counsel for both Defendants, and the interrogatories indicate that they are being propounded on both the City and Molin.  However, when Defendants answered Scheffler's discovery, Molin did not sign the interrogatory responses verifying his answers to those requests.  Federal Rule of Civil Procedure 33 provides that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections."  Defendants claim that the interrogatories were not directed to Molin personally because not all of the questions are worded in such a way that

(Footnote Continued from Previous Page)
properly include a prayer for punitive damages in his original Complaint.  *See Morlock v. West Cent. Educ. Dist.*, **Error! Main Document Only.**46 F. Supp. 2d 892, 923 (D. Minn. 1999) (rejecting argument that a request for punitive damages could not be included in an original complaint asserting claims under 42 U.S.C. § 1983).

suggests Molin may know the answers.  But whether Scheffler carefully crafted interrogatories to get information Molin was likely to know says nothing about his obligation to respond to discovery, even oddly targeted discovery, that is served on him.  Nothing other than the limits of Rule 26 prevents Scheffler from learning Molin's answers to the questions he chooses to ask, and if Molin does not know the answer to a question because it seeks information beyond his knowledge, Molin is free to say so.  Presumably, Molin has seen Scheffler's discovery and Defendants' answers reflect his responses—therefore, his counsel should have no problem giving Molin a verification page to sign.  If Molin has never seen and responded to these interrogatories, his responses to the questions asked are long overdue.  In either case, Molin's verified responses to those interrogatories must be provided within fourteen days of this Order.

### ***Protective Order***

Scheffler asks the Court to enter a protective order similar to the form suggested to parties litigating within this District, so that Defendants can turn over information they believe is protected from disclosure under the MGDPA. Defendants claim that no protective order is necessary because all of the discovery Scheffler seeks is irrelevant.  The Court declines to enter any umbrella protective order at this time.  However, in light of the fact that the Court has ordered the production of certain materials that Defendants believe are "private" or sensitive in one respect or another, Defendants are permitted to mark any such materials confidential and Scheffler may not disclose such items to anyone

outside this litigation or use them for any purpose other than this litigation unless he brings a motion to challenge any specific confidentiality designation.

Nothing in this Order should be interpreted to prevent the parties from continuing to negotiate and stipulate to a protective order if they believe information that must be disclosed under the Federal Rules needs protection from disclosure.  And to that end, the Court encourages the parties, in light of this Order, to continue working to resolve their differences about an agreed protective order.

### ***Payment of Expenses***

The Court denies Scheffler's request for payment of the expenses incurred in bringing his motion to compel because an award of expenses would be unjust under the circumstances.  *See* Fed. R. Civ. P. 37(a)(5).

**JJK**